25653. DARBY *v.* GEORGIA TIN-PLATE & METAL CO.

DECIDED NOVEMBER 21, 1936.

*B. P. Jackson,* for plaintiff in error.

MACINTYRE, J. Georgia Tin-Plate & Metal Company sued J. F. Darby, trading as J. F. Darby Lumber Company, on an account aggregating $781.83. The plaintiff procured a verdict and judgment for said amount, and the question for determination is whether the court erred in overruling the defendant's motion for new trial containing only the general grounds.

J. F. Darby testified in substance that his main office and place of business was Vidalia, Georgia, but that he also had a branch of said business at Swainsboro, Georgia, "for the handling of lumber and building materials and supplies;" that he employed W. M. Breedlove "to look after the stock on hand, sell and deliver such materials as were handled at Swainsboro, and look after the collection for same;" that witness discharged Breedlove in "the latter part of April, 1934," because "he was doing business and taking on building and repairing contracts . . on his own account;" that after his discharge Breedlove was allowed by the wit-

ness to use a part of the latter's warehouse in Swainsboro, because Breedlove told the witness that "he had no other place for carrying on his business;" that the witness was using only "a very small part of this warehouse, and there was plenty of room for . . Breedlove to use in connection with his business;" that the witness dictated and signed two letters addressed to Georgia Tin-Plate & Metal Company, the first dated June 19, 1934, and the second, November 10, 1934. (These letters were introduced in evidence, and will be referred to later.) This witness further swore: "I did not know anything about the purchases made from the plaintiff by . . W. M. Breedlove in the name of J. F. Darby Lumber Company until about the time or just before the date of the letter ·. . of June 19, 1934. This letter was in reply to one I had received from the plaintiff company requesting payment of this account. I replied to it without checking up on the account, and thinking that probably some material had been delivered by this company to Mr. Breedlove at Swainsboro, and that they may have been used or were to be used in certain jobs of repairs being made in connection with Home Owners Loan Corporation loans. . . I did not know at the time whether I had received any benefit from these materials sued for or not. . . Just a few days before the letter dated November 10, 1934, . . was written, a representative of Georgia Tin-Plate & Metal Company came to see me. . . I told him that it was probable that some of the material Breedlove bought from the company was used in some of the contract jobs I was interested in, . . but that I did not know, but was hoping to get this information from Mr. Breedlove . . within the next few days, and that if this information disclosed that any part of this material was used in connection with my business that I would gladly pay it, although I did not authorize Breedlove at any time to purchase it for my account, . . but that I did not acknowledge any liability for the account unless I could get evidence . . that I got the benefit of the materials. . . After this letter [of November 10, 1934] was written, I continued my efforts to get this information, but soon found that Breedlove was siding against me . . and refused to tell me anything about it, and I concluded that he must have used all the materials in connection with his . . contracts. All of these materials were purchased by Breedlove after I had discharged him."

H. Peoples, manager for the Georgia Tin-Plate & Metal Company, testified: "On April 30, 1934, at my direction, certain . . articles set out in the duplicate invoice attached to the . . petition, . . purchase-price of which aggregated $227.38, were delivered to Mr. George Hall . . according to a list of requirements set out on a letter head of the J. F. Darby Lumber Company." The "list of requirements" referred to by the witness contained an itemized statement of various articles of the total stated value of $227.38, but was not signed. The receipt for said articles was signed by George Hall. Both papers were introduced in evidence. After testifying in a like manner to five other deliveries made to R. L. Page, Peoples swore: "The amount of the plaintiff's account against J. F. Darby Lumber Company now owing and unpaid is $781.83. . . All the transactions that I had in connection with this account, before or at the time the goods were delivered, were with W. M. Breedlove, who I understood was in charge of the business and office of the J. F. Darby Lumber Company at Swainsboro, Georgia. All of the goods making up the account were delivered upon orders sent to the plaintiff company by W. M. Breedlove, who had business of J. F. Darby Lumber Company at Swainsboro in charge, and according to the orders which have been introduced in evidence in this case. I had no direct communication, or conversation, or transaction of any kind with Mr. J. F. Darby until after the merchandise sued for had all been delivered. After the accounts became past due I saw Mr. Darby, . . and asked that payment be made. He did not deny that he owed it or that he was responsible for it, but did refuse to pay." Four of the "list of requirements" referred to by Peoples were orders signed by W. M. Breedlove for J. F. Darby Lumber Company. All the orders and receipts were introduced in evidence.

George Hall testified: "On about April 30, 1934, W. M. Breedlove had charge of the office and place of business of the J. F. Darby Lumber Company at Swainsboro, Georgia. . . Mr. Breedlove got me to take my truck to Savannah . . and get a load of building materials from the Georgia Tin-Plate & Metal Company. He made out a list of the materials that he wanted, on printed letter-head of J. F. Darby Lumber Company, . . and gave it to me to take to the company in Savannah. . . I hauled

the materials to Swainsboro and unloaded them in the warehouse of the J. F. Darby Lumber Company, which was in charge of W. M. Breedlove. On previous occasions I hauled goods at Mr. Breedlove's request for the J. F. Darby Lumber Company." R. L. Page (after testifying in regard to the materials hauled by him on May 23, 1934) swore: "I later made three more similar trips to Savannah with my truck, at the request of Mr. W. M. Breedlove—on June 9, 1934, on June 12, 1934, and on June 27, 1934, and each time I carried an order from J. F. Darby Lumber Company, . . signed by W. M. Breedlove, who was in charge of J. F. Darby Lumber Company, and presented the order, . . and the materials were delivered to me and loaded on my truck, and each time I signed a receipt for same. . . All of the materials hauled by me on all of these trips . . were delivered to and placed in the warehouse of J. F. Darby Lumber Company in Swainsboro, Georgia. I do not know what authority Mr. Breedlove has to purchase or order the said materials from Georgia Tin-Plate & Metal Company for the account of J. F. Darby Lumber Company, except that I know that J. F. Darby Lumber Company was operating a business in Swainsboro for handling lumber and building materials, and that W. M. Breedlove was there in charge of and looking after the business of J. F. Darby Lumber Company at the time these goods were hauled by me . . and delivered and placed in the warehouse of J. F. Darby Lumber Company at Swainsboro and acknowledged by Mr. Breedlove."

The two letters referred to by J. F. Darby were in evidence. The first was dated June 19, 1934, addressed to Georgia Tin-Plate & Metal Company, and signed "J. F. Darby Lumber Company by J. F. Darby." It stated: "Replying to your letter of June 18, our office at Swainsboro has a lot of government jobs which have been tied up for some five or six weeks, expecting any time to get them completed and oked. As soon as we get the money in from these jobs we will immediately send your check, which we are expecting any day." The other letter, dated November 10, 1934, and addressed and signed as the first one, stated: "I am very much surprised that you have turned our account over to an attorney for collection after telling your representative that we would pay you some on this account within a few days."

Those letters savor very much of an acknowledgment of the

debt and a promise to pay it. True, the defendant gave testimony from which the jury might have reached a contrary view; but the jury, as was its right, appears to have laid more store by the letters than the defendant's explanation of the circumstances under which they were written. Considering the record as a whole, we are satisfied that the evidence supports the verdict. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*